**2006 BNH 050**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                              Bk. No. 05-13198-JMD
                                                                    Chapter 7
Laurie Dunlop,
        Debtor


Tara Landry,
        Plaintiff

v.                                                                  Adv. No. 05-1202-JMD

Laurie Dunlop,
        Defendant


*Biron Bedard, Esq.*
*Cook & Molan, PA*
*Concord, New Hampshire*
*Attorney for Plaintiff*

*Stanley H. Robinson, Esq.*
*Franklin, New Hampshire*
*Attorney for Debtor/Defendant*


## MEMORANDUM OPINION

### I.  INTRODUCTION

      Tara Landry ("Landry") filed a complaint against Laurie Dunlop ("Dunlop" or the "Debtor") seeking a determination that the state court judgment she obtained against the Debtor in the amount of $285,503.00, relating to the Debtor's breach of the implied warranty of habitability for her failure to repair the septic system at property rented by Landry from the

Debtor, is non-dischargeable under § 523(a)(6) of the Bankruptcy Code as a debt for willful and malicious injury.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

In December 2003, Landry rented an apartment in property in Tilton, New Hampshire, owned by the Debtor. The property consisted of a farmhouse out of which the Debtor operated her real estate business and a barn with an apartment above it in which Landry resided. During Landry's tenancy the septic system ceased working properly, which caused sewage to pool at the bottom of the stairs to Landry's apartment and occasionally to back up into the apartment. In addition, a bad odor was pervasive and prevented Landry from opening her windows.

Landry left messages at the Debtor's office about the problem but received no response. On the advice of the Tilton health inspector, on April 22, 2004, Landry wrote and delivered to Dunlop a formal letter complaining of the septic system problem and requesting its repair. Upon receipt of the letter, the Debtor or someone in her office sought an estimate for the septic system repair and, on or about April 29, 2004, the Debtor obtained an estimate to replace the septic tank for $2,500.00. The Debtor never undertook such repair.

On the advice of the Tilton health inspector, on or about April 30, 2004, Landry filed a petition under New Hampshire RSA 540-A:4 with the Franklin District Court (the "District

Court") indicating she was in immediate threat of irreparable harm because of a failed septic system on the property. She requested that the Debtor be ordered to repair the septic system. The District Court issued a temporary order on April 30, 2004, requiring the Debtor to "cure/correct/replace septic & leaching system immediately" and set a court hearing on the matter for May 13, 2004. The temporary order advised the Debtor that a willful violation of the order would constitute contempt of court and might result in the imposition of civil penalties, fines, and/or imprisonment.

The District Court held a hearing on May 13, 2004, at which the Debtor failed to appear, and the Court issued a final order finding Dunlop had violated RSA 540-A by failing to repair the septic system. The District Court set a further hearing for May 20, 2004, in order to determine whether the Debtor should be found in contempt and to determine damages. The Debtor failed to appear at the May 20, 2004, hearing. Frustrated by the Debtor's failure to appear at the hearings on May 13, 2004, and May 20, 2004, the District Court issued an order for the Debtor's arrest based on her failure to appear. On May 27, 2004, the District Court issued a second order for Dunlop's arrest arising out of her failure to repair the septic system and appear at court hearings. The District Court's order specifically advised the Debtor that she "should be mindful of the possibility of civil damages under RSA 358-A," which damages could be assessed in accordance with RSA 540-A:4(IX)(a). The District Court indicated that a further hearing would be set in order to determine whether the Debtor should be held in contempt for failing to comply with the District Court's orders and to determine damages.

On or about July 3, 2004, Dunlop was arrested pursuant to the District Court's orders of May 21, 2004, and May 27, 2004. The Debtor was released after posting bail to ensure her

3

appearance at the next court hearing.  On or about July 21, 2004, the District Court held a further hearing, at which the Debtor appeared, to determine whether the Debtor should be held in contempt for her failure to make the septic system repair as ordered and to determine whether damages should be awarded to Landry.  At the hearing, the Debtor informed the court that she was having problems and did not have the money to fix the septic system.  She indicated that if she had more time she would get the system repaired.  Landry agreed to giving the Debtor additional time to repair the septic system and deferred any determination of contempt and an award of damages at that time.  The District Court ordered the Debtor to engage a septic service repair or replacement service within seven days and to file written proof of the engagement with the court.  The District Court also ordered the Debtor to complete the septic system repair or replacement within thirty days.  Landry was permitted to withhold her rent pending completion of the repair.  The Debtor testified that it was her intent at that time to comply with the District Court's orders and make the required repairs.  However, the Debtor did not file proof of engagement of a septic service repairman or otherwise repair or replace the septic system at the property.

The District Court held a further hearing on or about September 10, 2004, concerning the Debtor's failure to correct the septic system.  Again, the Debtor failed to appear.  At the hearing, the District Court found that the Debtor had failed to repair the septic system and concluded that such failure constituted contempt of court.  The District Court also found that the Debtor had breached her implied warranty of habitability and that in accordance with RSA 540-A:4(VII)(b) Landry had suffered actual damages of $1,437.50 for the five months the septic system went

4

unrepaired.[1] The District Court further found that the Debtor had committed "a willful and knowing violation of the statutory protection under the implied warranty of habitability and interruption of the essential septic service to the leased premises, by [her] willful and knowing failure to correct the septic failure from April 21, 2004 and thereafter to the present, a total of 142 days." For that reason, the District Court awarded additional damages to Landry against the Debtor of $284,000.00 in accordance with RSA 540-A:4(IX)(a) and RSA 358-A:10.[2] The District Court ordered further that the Debtor could purge herself of the contempt upon repairing the septic system and paying Landry the damages it awarded.

On or about November 18, 2004, at a further hearing at which the Debtor did not appear, the District Court found the Debtor had not purged herself of the contempt by repairing the septic system. Accordingly, the District Court entered a judgment in favor of Landry against the

---

[1] The District Court found that Landry's use of the property was diminished by fifty percent. Her monthly rent was $575.00. Accordingly, the diminished value and thus Landry's actual damages totaled $1,437.50 ($575.00 x 50% x 5 mos. = $1,437.50).

[2] In accordance with RSA 540-A:4(IX)(a), the District Court found separate violations for each day the septic system went unrepaired from April 21, 2004, through the date of the hearing on September 10, 2004, or 142 violations. RSA 540-A(IX)(a) provides that any landlord that violates RSA 540-A:2 or any provision of RSA 540-A:3 shall be subject to the remedies set forth in RSA 358-A, New Hampshire's Consumer Protection Act. RSA 358-A:10 provides for minimum statutory damages of $1,000.00, and it permits statutory damages to be doubled or tripled if there has been a willful and knowing violation. Because the District Court found the Debtor's conduct to be willful and knowing, Landry was awarded $284,000.00 for the Debtor's violation of RSA 540-A:3 (i.e., $1,000.00/day x 142 days x 2 = $284,000.00).

The Court notes that the New Hampshire Supreme Court has recently recognized, however, that neither RSA 540-A nor RSA 358-A classifies a violation of RSA 540-A as an "unfair or deceptive act or practice" under RSA 358-A. Simpson v. Young, 899 A.2d 216, 220-21 (N.H. 2006). Therefore, the landlord in that case was not subject to enhanced damages of up to three times the amount of damages, where the tenant had failed to even argue that a violation of RSA 540-A is an "unfair or deceptive act or practice" under RSA 358-A. Id.

Debtor in the amount of $285,503.00.  Such debt remained unpaid at the time the Debtor filed bankruptcy on August 15, 2005.

The Debtor indicated that her failure to repair the septic system was due to a financial inability to pay for the repairs for which the Debtor had obtained an estimate of $2,500.00.  From December 24, 2003, through November 24, 2004, the checking account for Laurie A. Dunlop d/b/a Laurie Dunlop Realty had a positive cash flow and reflected an ability to pay the estimated costs to repair the septic system from time to time.  During this same period, the Debtor withdrew thousands of dollars for her own personal benefit and made deposits to accounts for the benefit of her son totaling $3,600.00.  The Debtor also paid another judgment creditor who was owed over $6,000.00.

At trial, the Debtor acknowledged that she may have had the financial ability to pay for the septic repair many times over the months from April 2004, to November 2004.  The Debtor testified that during this period she was not properly functioning as a person because she was addicted to drugs.  The Debtor testified that she began using cocaine in 2003 and this use continued during Landry's tenancy.  The Debtor's drug addiction caused her to become disengaged from her daily activities, both personal and business.  During this time, the Debtor was unable to operate her real estate business and her employees were leaving.  Her son had to go live with his father.  The Debtor stated she was not opening her mail or paying her bills.  Friends and co-workers tried to help the Debtor but, according to the testimony of a friend and former co-worker, the Debtor "had removed herself from life."  Apparently doing drugs was more important to the Debtor than anything else.  Eventually, in 2005, the Debtor lost the

property Landry rented as well as other property to foreclosure. On August 15, 2005, the Debtor filed a chapter 7 bankruptcy petition seeking to discharge her debts.

**III. DISCUSSION**

Parties contesting the dischargeability of a debt have the burden of proving each element of their claim, see Grogan v. Garner, 498 U.S. 279, 283 (1991); Palmacci v. Umpierrze, 121 F.3d 781, 787 (1st Cir. 1997), and each element must be proven by a preponderance of the evidence, Grogan, 498 U.S. at 291. Exceptions to discharge are to be narrowly construed and construed in favor of the debtor. Palmacci, 121 F.3d at 786.

At issue is whether the Debtor's obligation to Landry should be excepted from discharge under § 523(a)(6) of the Bankruptcy Code. This section provides that "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To except a debt from discharge under § 523(a)(6), a creditor must prove that (1) the debtor caused him or her injury; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious. Jones v. Svreck (In re Jones), 300 B.R. 133, 139 (B.A.P. 1st Cir. 2003). See also Cutler v. Lazzara (In re Lazzara), 287 B.R. 714, 722 (Bankr. N.D. Ill. 2002).

In general, a debt resulting from an injury that is inflicted intentionally and deliberately, and either with an intent to cause the harm complained of, or in circumstances in which the harm was certain or almost certain to result from the debtor's act, is a debt arising from willful and malicious conduct under § 523(a)(6) and therefore is nondischargeable. 4 Collier on Bankruptcy ¶ 523.12[2] (Lawrence P. King et al. eds., 15th rev. ed. 2004). "[D]ebts arising from recklessly

7

or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Kawaauhauv. Geiger, 523 U.S. 57, 64 (1998). "[T]he policy goal of § 523(a)(6) . . . is to except from a bankruptcy discharge those debts incurred by morally reprehensible conduct." O'Brien v. Sintobin (In re Sintobin), 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000).

Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner for purposes of § 523(a)(6), such elements may be proven through circumstantial evidence. Lazzara, 287 B.R. at 723; Sintobin, 253 B.R. at 531. A finding of willful and malicious injury depends heavily on the facts of each case. Selzer v. Alderson (In re Alderson), No. BK03-42189, A03-4059, 2004 WL 574134, at *2 (Bankr. D. Neb. Feb. 11, 2004).

### A. Injury

The first requirement for excepting a debt from discharge under § 523(a)(6) is that the creditor suffer some injury. In the instant case, Landry's right as a tenant to have a habitable residence was compromised by the Debtor's failure to repair the defective septic system at the property. The Debtor's violation of RSA 540-A:3 and breach of the implied warranty of habitability resulted in actual damages of $1,437.50 and statutory damages of $284,000.00 per the District Court order. The Court finds that Landry has established the injury element of her claim as required.

### B. Willfulness

The word "willful" as used in § 523(a)(6) means "deliberate or intentional," referring to a deliberate or intentional act that necessarily leads to injury. Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997). The United States Supreme Court has indicated that "[t]he word 'willful' modifies the word 'injury,' indicating that nondischargeability takes a

8

deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Geiger, 523 U.S. at 61; see also Roumeliotis v. Popa (In re Popa), 140 F.3d 317, 318 (1st Cir. 1998) (quoting Geiger). Section 523(a)(6) seems to refer to an intentional tort, where the actor intended the consequences of an act, not simply the act itself. Id.

The Court must determine whether the Debtor acted willfully in failing to repair the septic system over a seven month period from April 2004, the time Landry first complained of septic problems, through November 2004, when the District Court entered a final judgment in Landry's favor. The Debtor argued at trial that the reason she failed to repair the septic system was due to her addiction to drugs. The parties have cited case law, not directly on point, suggesting that the Court may consider a person's voluntary intoxication when determining whether that person's actions are deliberate and intentional within the meaning of § 523(a)(6). See RSA 624:4 (indicating evidence of intoxication is admissible in criminal proceedings whenever it is relevant to negate an element of the offense charged including intent); Hanover Ins. Co. v. Talhouni, 413 Mass. 781 (1992) (indicating evidence of voluntary intoxication is relevant to determining the presence or absence of intent with reference to an exclusion clause in a liability policy); MacKinnon v. Hanover Ins., 124 N.H. 456 (1984) (concluding that evidence of intoxication on the issue of actual intent is admissible in a civil matter involving coverage under a homeowner's liability policy); State of New Hampshire v. Warren, 114 N.H. 196 (1974) (indicating that the effect of alcohol was a factor to be considered with all others in resolving the issue of whether the defendant could form the requisite intent to commit burglary or arson); cf. Chalmers v. Harris Motors, 104 N.H. 111 (1962) (declining to consider intoxication in judging a person's ability to use care as he was under a duty to use the care of a sober person in the same

circumstances). See also State Farm Mut. Auto. Ins. Co. v. Fielder (In re Fielder), 799 F.2d 656 (11th Cir. 1986) (concluding that a debtor's obligation to an insurer was nondischargeable under § 523(a)(6) where the liability arose as a result of the debtor's operation of a motor vehicle while legally intoxicated); In re Cloutier, 33 B.R. 18, 20 (Bankr. D. Me. 1983) (finding nondischargeable a debt resulting from driving while intoxicated because the substantial certainty of injury arising from the judgment-debtor's drinking gave rise to an inference of an intent to injure) (cited in Fielder, 799 F.3d at 658). In light of these cases the Court will consider the Debtor's voluntary intoxication from drugs as one factor to review in determining whether the Debtor had the requisite intent under § 523(a)(6).[3]

The Court must determine then whether the Debtor possessed an "actual intent to cause injury" to Landry. See Popa, 140 F.3d at 318. A review of the facts suggests she did. First, Dunlop admitted at trial that the failed septic system presented a harmful situation to her tenant. She was aware or should have been aware that her failure to repair the system would be a health hazard and would result in unsanitary living conditions for Landry. Second, the Debtor received no less than nine notices, including seven court orders,[4] that the there was a septic system problem at the property. The Debtor also was arrested in connection with this District Court action. By no later than the date she appeared for a hearing in July 2004, during a time when she

---

[3] While the Debtor presented this defense of voluntary intoxication only shortly prior to trial, the Court will not bar this defense as the Debtor had argued in her amended answer that, in addition to not having the financial ability to make the septic system repair, her actions did not rise to the level of willfulness and maliciousness required under § 523(a)(6), which necessarily made the Debtor's intent an issue against which she would need to defend at trial. See Amended Answer at Doc. No. 6 at ¶¶s 19-21.

[4] Landry spoke to the Debtor about the problem prior to April 22, 2004. Landry delivered a letter to the Debtor seeking repair on April 22, 2004. The Debtor was served with court orders related to the problem dated April 30, 2004, May 13, 2004, May 21, 2004, May 27, 2004, July 21, 2004, September 10, 2004, and November 18, 2004.

admits she was sober, Dunlop knew that she was under a court order to fix the septic system at the property.  Third, the Debtor had sufficient funds to pay for septic system repairs many times during the seven month period at issue.  Fourth, the District Court concluded that the Debtor's actions in failing to repair the system were willful and knowing, i.e., the Debtor acted in knowing disregard of the District Court's orders requiring repair of the septic system.  The District Court's award of statutory damages for contempt evidence its belief the Debtor knew the consequences of her actions.

As for the Debtor's defense that she could not possess the requisite intent because of her addiction to drugs, the Debtor testified that she was not intoxicated all the time during the relevant period.  The Debtor in fact had moments of clarity, including the day she appeared in Court in July 2004.  A close examination of the financial records Landry introduced into evidence reveals that during this entire period the Debtor was repeatedly signing business checks.  Thus the Debtor's voluntary intoxication cannot negate her intent for the entire relevant period.

Because the Debtor continued to ignore the District Court's orders to repair the septic system despite having periods of clarity and sobriety and the financial means to make the repair, the Court concludes that the Debtor intended the consequences of her conduct, or her failure to act. The continued failure to repair the septic system created an objective substantial certainty of harm.  Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598, 606 (5th Cir. 1998).  Accordingly, the Debtor's actions were willful within the meaning of the statute.

11

### B. Malice

"The word 'malicious' requires that the injury be 'wrongful' and committed 'without just cause or excuse, in conscious disregard of one's duty.'" Jones, 300 B.R. at 140 (quoting Printy, 110 F.3d at 859); see also Kotsopoulous v. Mater (In re Mater), 335 B.R. 264, 268 (Bankr. D.N.H. 2005). "'No special malice toward the creditor need be shown,' as malice can be present 'even in the absence of personal hatred, spite or ill-will.'" Id. (quoting Printy, 110 F.3d at 859). "The malice element of section 523(a)(6) requires an intent to cause the harm, and the fact that the injury was caused through negligence or recklessness does not satisfy that standard of proof." Printy, 110 F.3d at 859; see also Geiger, 523 U.S. at 64 (stating "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)").

The Court has previously concluded that the Debtor intended to cause harm to Landry. The Court also finds that the Debtor's failure to repair the septic system was "wrongful." In New Hampshire, landlords impliedly warrant that the premises they lease are habitable. See Adams v. Woodlands of Nashua, 151 N.H. 640, 642 (2005) ("[A] tenant whose premises are unsafe or unsanitary may have a remedy because such conditions could violate the implied warranty of habitability."); Crowley v. Frazier, 147 N.H. 387, 391 (2001) ("A defect that renders premises unsafe or unsanitary, and thus unfit for living therein, constitutes a breach of the implied warranty of habitability."). This implied warranty of habitability entitles tenants to damages, such as those awarded by the District Court to Landry in this case, when that warranty is breached. See Crowley, 147 N.H. at 391; RSA 540-A:4(VII)(b).

It is clear that the Debtor had a duty to maintain a habitable residence for Landry, and her failure to maintain such habitability resulted in an award of damages. The Debtor's excuse or

reason for failing to provide a residence with a working septic system was her addiction to drugs. However, despite her addiction, the evidence establishes that between the District Court hearing in July 2004 and the date of entry of the final state court judgment in November 2004, the Debtor had sufficient periods of clarity, sufficient funds and knowledge of the seriousness of the problem to be aware of the necessity to repair the septic system.  Courts have held that knowledge that legal rights are being violated is insufficient to establish malice, absent some additional aggravated circumstances.  Barclays American/Business Credit, Inc. v. Long (In re Long), 774 F.2d 875, 880-82 (8th Cir. 1985) (quoted in Ehrman v. Feist (In re Feist), 225 B.R. 450, 454 (Bankr. D.N.D. 1998)).  The Court finds that the Debtor's repeated failure to comply with the District Court's orders requiring repair of the septic system over a seven month period, despite her arrest for failure to appear at court hearings, and her having from time to time sufficient funds to effectuate the necessary repairs constitutes additional aggravated circumstances.  Thus, even though the Debtor had no special malice, spite, or ill-will toward Landry, the Court finds that malice within the meaning of § 523(a)(6) was present in this case.

## IV.  CONCLUSION

The Court concludes that Landry has satisfied her burden under § 523(a)(6) of establishing, by a preponderance of the evidence, that the Debtor intentionally and deliberately failed to repair the septic system at the property and knew that such failure would cause harm to Landry by creating an unsanitary residence, with raw sewage seeping outside the apartment and backing up inside the apartment.  The $285,503.00 debt arising from such willful and malicious conduct is therefore nondischargeable pursuant to § 523(a)(6).  This opinion constitutes the

Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   December 27, 2006                             /s/ J. Michael Deasy
                                                                                                     J. Michael Deasy
                                                                                                     Bankruptcy Judge